## McFARLAND *v.* DARIEN AND WESTERN RAILROAD CO.

1. There being a conflict in the evidence as to material issues in the case, the judge erred in directing a verdict.
2. A ground of a motion for a new trial, based upon the admission of evidence, should state what objection was made thereto when it was offered at the trial, and should affirmatively show that the objection was then urged; otherwise no question is raised for determination by this court.
3. Error was assigned upon the court's refusal "to permit the counsel for the plaintiff on cross-examination to ·inquire of the witness Emerson, the vice-president and general manager of the defendant, in regard to the charges preferred against him by the board of directors of the defendant, and which they were seeking to ·inquire into at the time the said Emerson demanded 'of the plaintiff that he turn over to him the office he then held with the defendant." This assignment is without merit, as it is impossible to determine from this ground of the motion whether the alleged charges were of such a nature as to render evidence touching them relevant and material, without searching through the brief of evidence, which this court will not undertake to do.

Submitted June 11,—Decided December 13, 1906.

Breach of contract.   Before Judge Seabrook.   McIntosh superior court.   August 19, 1905.

McFarland sued the railroad company to recover damages for an alleged wrongful discharge from its employment. The testimony of the plaintiff was in substance as follows: He was elected by the directors of defendant company to the position of auditor and superintendent, the term of said employment being one year from February, 1904. At the same meeting of the directors one Emerson was elected vice-president and general manager. On the 25th day of July of the same year, one Bailey presented a letter to plaintiff from Emerson, which read as follows: "This will introduce to you Mr. A. M. Bailey. . . I have arranged with him to recast the books and accounts of the Darien & Western Railroad. . . You will put him in possession of the office at Darien. He will, in addition to auditing past accounts, handle all business for the present, and you will put yourself absolutely under his instruc-

tions, taking orders from him as though they were from me. In order that there will be no misunderstanding, he will, when necessary, use the title of acting auditor or assistant general manager. As soon as Mr. Bailey has the routine in hand we will endeavor to arrange for your vacation. You will introduce Mr. Bailey to the bank and have them take his signature and explain to them that all vouchers on and after the date he determines are to be signed by him instead of yourself. I may say that this matter has been thoroughly discussed here in the New York office, and I am acting under the direct instructions of the members of the executive committee." The plaintiff refused to obey the instructions contained in this letter, claiming that the same were unauthorized, and were intended to effectuate his unlawful discharge. On July 29 Emerson himself came to see the plaintiff and repeated the instructions given in the letter, which the plaintiff still refused to obey. The plaintiff admitted that Emerson was his superior officer, but claimed that he was amenable to the directors of the company and not to Emerson, who had no authority to give said instructions. Upon his refusal to obey said orders, Emerson discharged the plaintiff, and placed Bailey in charge of the office.

Emerson, for the defendant, testified that prior to the meeting of the directors on February 18, 1904, he had entered into a contract with the chief owners of the road to take absolute charge of the management of said road, and had communicated this fact to the plaintiff; that at the meeting of the directors on February 18, 1904, Emerson had appointed plaintiff to the position of auditor and superintendent, which position plaintiff held under Emerson and subject to his control; that Bailey was sent merely to audit the books of plaintiff, and that the letter above referred to was merely an order to turn the books and other effects of the office over to Bailey to be audited; and that plaintiff's continued refusal to obey said instructions was a breach of duty, for which plaintiff was discharged. Defendant introduced the minutes of the next subsequent meeting of the board of directors after the meeting in February, 1904, which "pointed out certain inaccuracies" in the minutes of the former meeting, and amended the same to read: "Mr. Emerson announced that Mr. F. H. McFarland would be appointed superintendent and auditor, which was acquiesced in by

those present." The court directed a verdict for the defendant, and the plaintiff excepted.

*Walter G. Charlton,* for plaintiff.

*Hitch & Denmark,* for defendant.

BECK, J. 1. Whether the letter from Emerson, who was the vice-president and general manager of the corporation, was intended as a dismissal and discharge of the plaintiff from the position of auditor and superintendent, must necessarily depend to a certain extent upon the construction which should be placed upon that document in the light of the proved facts and circumstances in the case. Independently of any oral testimony, it would seem to us that the letter was practically a dismissal of McFarland, at least temporarily, from said position. He was instructed to put another "in possession of the office at Darien." And the party to whom absolute possession of the office was to be given was not only to take actual, physical possession of the office, and all of his books, documents, papers, etc., but the auditor and superintendent was to put himself absolutely under the control and direction of the new acting auditor, and was to receive orders from him as if they came from the general manager. The plaintiff was deprived of the right to sign vouchers and checks, and the suspension of his right to exercise these functions was for an indefinite time; and it might be inferred from the terms of the letter itself that it was to be for a long-continued period. According to instructions given in the letter, he was not only to surrender the right to sign vouchers and checks, but he was to introduce the party who was placed in his position "to the bank and have them take his signature, and explain to them that all vouchers, on or after the date he determines, are to be signed by him instead of yourself." Could this not be construed into a request not only to submit gracefully to decapitation, but to assist at the execution? But we can not say as a matter of law that under the circumstances of the case the instructions should not have been obeyed, if it were true, as the witness for the defendant testified, that in cases of this kind it was customary for the special auditor "to go down and make himself the officer of that particular place." If it was usual and customary in cases like that under consideration for the special auditor who comes down to audit the books and accounts of the permanent auditor, to take possession and control of the office, and to assume

all functions pertaining to the one whose books are being investigated, and deprive the latter for an indefinite period of all authority relative to that office, then the plaintiff should have been governed by the instructions contained in Emerson's letter, and his refusal to do so would have been an act of disobedience authorizing his discharge by the proper authorities. But the jury might have found, under the testimony in this case, that the plaintiff was requested to submit to an assumption of authority which was not usual and customary for special auditors, such as Mr. Bailey was, at the time the letter was presented, to exercise, especially as there was no hint in the letter itself, nor in anything that Mr. Bailey said when he presented it, to indicate that within any reasonable or definite time said Bailey would be divested of the authority which he claimed the right to take upon himself by virtue of Emerson's instructions, or that plaintiff would ever be revested therewith. So whether the plaintiff refused to obey a proper order, in his refusal to comply with the instructions contained in the letter referred to, depended upon evidence tending to show whether or not the thing that he was commanded to do was the customary and proper thing to do in such cases. Upon this point the evidence was conflicting, and the issue thus made should have been submitted to the jury; and the court erred in determining the question himself. And moreover it seems to us that the jury should also have been permitted, under the facts of the case, to find, and by their verdict to say, whether the letter written by Emerson and presented by Bailey was intended to effectuate a bona fide purpose to audit the books, papers, and documents in the office of plaintiff, or whether it was the first step of a series which should ultimately lead to the displacement and discharge of the plaintiff in this case,—in other words, whether it was not part of a covert scheme to displace and remove McFarland without ground, and without having preferred charges of any character against him.

2, 3. The rulings in the headnotes sufficiently dispose of the other assignments of error in the various grounds of the motion, which were based upon the exclusion of certain evidence offered by the plaintiff, and the admission of other evidence introduced by the defendant.          *Judgment reversed. All the Justices concur.*